IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **TAMMY BANDY,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 7:19-cv-00826** |
| **v.** | ) | |
| | ) | **By: Michael F. Urbanski** |
| **CITY OF SALEM, VIRGINIA,** | ) | **Chief United States District Judge** |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This matter comes before the court on the defendant's—the City of Salem, Virginia ("Salem")—motion for summary judgment, ECF No. 31. The court held a pretrial motions hearing on Tuesday, February 23, 2021, via videoconference. Because Bandy cannot show that age discrimination was the but-for cause of the decision to not promote her and because no reasonable jury could find that Bandy was constructively discharged, the court will **GRANT** Salem's motion for summary judgment.

## I.    BACKGROUND

On December 10, 2019, plaintiff Tammy Bandy filed this case against Salem alleging it discriminated against her based on her age in violation of the Age Discrimination in Employment Act ("ADEA"). Compl., ECF No. 1. Bandy, 53, was previously employed as a part-time box office assistant at the Salem Civic Center ("Civic Center"), an event venue owned and operated by Salem.  Id. at ¶ 5, 8. Bandy alleges that she was an excellent employee who was frequently commended for her good work and had good relationships with her supervisors. Id. at ¶ 9; Bandy Dep., ECF No. 33-9, at 48.

On January 7, 2019, Bandy applied for the then-available Booking Coordinator position at the Civic Center. Compl., ECF No. 1, at ¶ 10; Bandy Application, ECF No. 32-3. The official position description characterizes the job as "the booking agent for the Civic Center, managing reservations and rentals, preparing contracts, preparing invoices and financial records, and related work as apparent or assigned." Booking Coordinator Position Description, ECF No. 32-6, at 1. The Booking Coordinator reports directly to Wendy Delano, the Civic Center's director. Id.; see also Delano Dep., ECF No. 33-2, at 15–16. According to Delano, the full-time position's function:

> is to bring in events such as meetings or banquets or possibly sporting events or even . . . if [the Civic Center has] a convention in town, their job is to try to coordinate; basically they are looking to not only sell us externally to people outside but also looking to sell us where people come to us looking for places to have functions.

Delano Dep. at 77. This work requires "get[ting] to know your client" and determining "how to sell to them, what works, how room setups could be beneficial, [and] how we could make it very easy and convenient for them to come into our facility." Id. at 77–78. The position description required applicants to have a "[h]igh school diploma or GED and moderate experience in event planning, marketing and advertising, sales, hotel booking, or [an] equivalent combination of education and experience." Booking Coordinator Position Description at 1.

Kristie Jordan, a member of Salem's Human Resources Department ("HR"), looked at all candidates' applications and sent along eleven that she felt were qualified based on the position description. Jordan Dep., ECF No. 33-12, at 13–17; Rodgers Dep., ECF No. 33-7, at 5–6; Delano Dep. at 33–34. Delano then chose six candidates to interview. Delano Dep. at

2

34. All candidates were interviewed by a committee that included Delano; Hank Luton, then-events manager; and Chris Fischer, the outgoing booking coordinator. Id. at 31.

Bandy was one of the six candidates given an interview. Id. at 34. After graduating from a local high school, Bandy worked for Salem as a clerk in the Utility Billing Department for nearly two years. Bandy Dep., ECF No. 33-9, at 6–7, 9. After that, she worked as a secretary in the Civic Center for about a year and eight months and, during that time, her job included booking duties similar to those of the Booking Coordinator position. Id. at 51; see also Salem Personnel Transaction Sheet, ECF No. 32-2. After leaving the Civic Center to stay home for about a year, Bandy worked various clerical jobs through a temp agency. Bandy Dep. at 22. In 1990, she worked as a clerk typist for the Roanoke County Parks and Recreation for a year and a half. Id. at 23–24. She then stayed at home with her daughter for 10 years before returning to work as an optical receptionist for 18 months. Id. at 24; see also Bandy Application, ECF No. 32-3, at 2. She then worked as a part-time sales associate at a home décor store for a year and 5 months and then another store for two years. She left the workforce in October 2008 until she was hired as a part-time box office cashier at the Civic Center in February 2018.[1] Bandy Dep. at 31–32, 34–40; see also Bandy Application at 1–2. Bandy's interview committee for that position included Delano; Luton; and Stephanie Sowder, the box office supervisor. Bandy. Dep. at 38–42. As a box office cashier, Bandy greeted customers, assisted with ticket selection and purchases, answered the phone, counted sporting event vouchers, processed employee information for the Salem Fair, generated cashier reports,

---

[1] Bandy worked at an animal shelter for a few days in 2016, but discovered she was severely allergic to cats. Bandy Dep. at 35.

and secured funds in the Civic Center vault. Id. at 42–43, 45. Bandy's familiarity with the facility was one of the strengths of her application. However, Delano, Luton, and Fischer all testified that Bandy's interview was lackluster and her answers were short. See Delano Dep., ECF No. 33-2, at 65–66, 83; Luton Dep., ECF No. 33-3, at 44–46, 77–78; Fischer Dep., ECF No. 33-4, at 21, 34. Delano thought she showed little enthusiasm for the job and worried about her ability to sell the Civic Center to prospective clients beyond naming the facilities basic functions. Delano Dep. at 66, 83.

Jefferson Lee also applied for the Booking Coordinator position. Lee is Luton's wife's cousin. Luton Dep. at 30.[2] Lee holds a bachelor's degree in Sports Business with a minor in Communications. Lee Application, ECF No. 32-15, at 1. During college, Lee worked helped with event planning and promotion for the Cleveland Cavaliers and Cleveland Indians, which showed Delano that he would be able to handle the marketing and sales side of the job. Id. at 2; Delano Dep. at 80–83. He seemed upbeat and unafraid to make cold calls. Delano Dep. at 80–82, 87–88. At the time he applied, he worked full-time as an assistant athletic director at a local high school was also enrolled in an online master's degree program in Executive Leadership. Lee Application at 1. Although the position only required a high school diploma or GED, Delano thought Lee's higher education might be "helpful down the road" and "showed that he had the propensity to see something through." Delano Dep. at 82–83. In his athletic director role, Lee coordinated travel arrangements for school teams, which Delano thought would lend itself well to the Booking Coordinator position because it showed that he

---

[2] Delano was aware of the relationship, but thought Luton could (and did) remain impartial since he had sat on other interview panels for positions that were not offered to Lee. Luton Dep. at 29–31; Delano Dep. at 36–37.

understood "the logic behind scheduling things." Id. at 80–82. Overall, Delano thought Lee was "very positive," "had sharp answers" to interview questions, and was the most enthusiastic about the job. Id. at 87–88. In particular, Lee came into the interview carrying the Civic Center's facility manual, which showed Delano that he "had taken the time do the homework and get to know the facility," which "spoke volumes" to her. Id. at 83–84. Lee had applied to four other positions at the Civic Center but never received an offer. Jordan Dep., ECF No. 33-12, at 41–54. This time, he was the top choice for Delano, Luton, and Fischer. See Delano Dep., ECF No. 33-2, at 86; Luton Dep., ECF No. 33-3, at 51, 53; Fischer Dep., ECF No. 33-4, at 38.

A few days after her interview, Salem informed Bandy that it would not hire her for the position. Compl., ECF No. 1, at ¶ 11–12. Salem hired Lee instead. Candidate Recap Post-Interviews, ECF No. 32-14. The interview committee ranked Lee as its top candidate and Bandy as its fourth candidate. Id. The committee's second and third favorite candidates were approximately 44 and 60 years old respectively. Id.; Delano Dep. at 35.

Bandy alleges that Delano told her that she did not get the job because (1) Bandy had done the job previously, (2) she was a reliable employee, (3) she had shown she could learn different computer programs, (4) Salem would not want to hire her since she already worked at the Civic Center, and (5) of the 30 applicants they had interviewed, she was one of only six who were interviewed and one of only four who were qualified for the position. Compl. at ¶ 12; see also Bandy Dep., ECF No. 33-9, at 68–71. This "dumbfounded" Bandy because these seemed like reasons to hire her. Compl. at ¶ 12; Bandy Dep. at 68–71.

On February 14, 2019, Luton allegedly told Bandy that, though her interview went well, Salem hired Lee because he is "much younger" (approximately 25 years old) and "more energetic." See Bandy Dep., ECF No. 33-9, at 80, 85; Bandy Text Message, ECF No. 33-15.[3] When Bandy's "jaw hung open," Luton allegedly "got a deer in the headlights look," and said, "I mean he is fresh out of college with a sports degree," then walked away. Bandy Dep. at 80. On April 23, 2019, when Bandy told Delano what Luton had said, Delano candidly responded "that was probably his honest answer, at least in his mind," and that she had "no doubt in [her] mind that what he told [Bandy was] how he felt." Recorded Conversation, ECF No. 32-18, at 18:48–19:04. Delano told Bandy:

> [Luton] is not the one that made that decision. We all did. That's why there are three people on the panel. And although [Fischer] was the other one [on the panel], [Fischer and Luton] didn't outnumber me. If I didn't agree with that decision, I wouldn't have put him in there, because I have the authority to flip that switch.

Id. at 13:42–58. She also told Bandy that age had nothing to do with her decision and that Luton's comments bothered her because they did not give proper credit to all that Lee brought to the table. Id. at 9:44–58. In her deposition, Bandy testified that she believed that age discrimination did not influence Delano's personal decision. Bandy Dep. at 106; see also Recorded Conversation at 24:00–14 (acknowledging in conversation with Delano that she did not believe age played a role in her decision).

---

[3] In his deposition, Luton goes back and forth between saying he cannot recall saying this and denying that he said it. Luton Dep. 64–70. At this time, the court credits Bandy's allegations as to Luton's statements given the case's posture and the evidence tending to show that Bandy told others about the age-related comments shortly after they were allegedly made. See, e.g., ECF No. 33-15.

Bandy resigned on the same day of her recorded conversation with Delano and ceased working for Salem after May 6, 2019. Compl., ECF No. 1, at ¶ 16. Before her departure, Bandy alleges that Luton harassed her by (1) putting his arm around her, grinning, saying that he heard she was "leaving us," and then walking out, and by (2) asking when they were having a "celebration party" for her resignation. Bandy Dep., ECF No. 33-9, at 99–100.

Bandy's lawsuit alleges that Salem's actions constitute harassment and discrimination because of her age and that she has suffered loss of income and benefits as well as mental and emotional pain and suffering. Compl. at ¶ 18–20. She seeks equitable and injunctive relief; punitive damages; and liquidated and compensatory damages including, but not limited to, front and back pay with interest and attorney's fees and costs. Id. at ¶ 21.

## II.   LEGAL FRAMEWORK

Pursuant to Federal Rule of Civil Procedure 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citation omitted). The moving party bears the initial burden of

demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor.'" McAirlaids, Inc. v. Kimberly–Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (citing Tolan v. Cotton, 572 U.S. 650, 651 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255. However, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." Humphreys & Partners Architects, L.P. v. Lessard Design, Inc., 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation marks omitted).

## III.   BANDY'S FAILURE-TO-PROMOTE CLAIM

Bandy argues that Salem failed to promote her because of her age. Under the ADEA, an employer may not "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). An employer may only be held liable for the discriminatory actions of an actual decisionmaker

8

for an adverse employment action, not just any subordinate employee. Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 286 (4th Cir. 2004) (en banc). "A plaintiff can prove a violation of the ADEA through direct or circumstantial evidence." Cole v. Family Dollar Stores of Md., Inc., 811 F. App'x 168, 172 (4th Cir. 2020) (citing Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 725 (4th Cir. 2019)). "Regardless of the method of proof, a plaintiff retains the ultimate burden to prove by a preponderance of the evidence that age…was 'the but-for' cause of the challenged employer decision.'" Cole, 811 F. App'x at 172 (citing Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177–78 (2009)). Unlike some other employment discrimination cases, "an employee cannot prevail on an age discrimination claim by showing that age was one of multiple motives for an employer's decision; the employee must prove that the employer would [have promoted] her in the absence of age discrimination." Westmoreland, 924 F.3d at 725 (emphasis in original). In short, "ADEA plaintiffs face a high causation burden." Arthur v. Pet Dairy, 593 F. App'x 211, 219 (4th Cir. 2015).

**A. A reasonable jury could conclude that the interview committee, which included Luton, was the actual decisionmaker.**

Salem argues that the court should grant its motion for summary judgment because the record contains no evidence that Wendy Delano, the actual decisionmaker, discriminated against Bandy because of her age in deciding to hire Lee over her. Bandy argues that the interview committee, which included Luton, was the actual decisionmaker.

In Hill, 354 F.3d at 286, the Fourth Circuit held that Title VII does not "limit the discrimination inquiry to the actions or statements of formal decisionmakers for the employers," recognizing that "[s]uch a construction ... would thwart the purposes of [Title VII] by allowing employers to insulate themselves from liability simply by hiding behind the

9

blind approvals, albeit non-biased, of formal decisionmakers." Still, the Fourth Circuit stressed that it would not "endorse a construction of the discrimination statutes that would allow a biased subordinate who has no supervisory or disciplinary authority and who does not make the final or formal employment decision to become a decisionmaker simply because he had a substantial influence on the ultimate decision or because he has played a role, even a significant one, in the adverse employment decision." Id. at 290. While the Fourth Circuit couches its holding in agency principles, it references the "cat's paw" theory advanced by Bandy, noting that "[w]hen a formal decisionmaker acts merely as a cat's paw for or rubber-stamps a decision, report, or recommendation actually made by a subordinate, it is not inconsistent to say that the subordinate is the actual decisionmaker." Id. at 290.

This determination is critical since "[d]etermining the actual decisionmaker responsible for the adverse employment action can be paramount to determining whether the protected trait played a role in the decision." Ousley v. McDonald, 648 F. App'x 346, 348 (4th Cir. 2016) (unpublished). In Hill, the Fourth Circuit explained:

> To survive summary judgment, an aggrieved employee who rests a discrimination claim under…the ADEA upon the discriminatory motivations of a subordinate employee must come forward with sufficient evidence that the subordinate employee possessed such authority as to be viewed as the one principally responsible for the decision or the actual decisionmaker for the employer.

354 F.3d at 290. Notably, the Fourth Circuit has affirmed decisions finding that a committee, rather than a single person, can be considered "the one principally responsible" for a decision. See, e.g., Schafer v. Maryland Dept. of Health and Mental Hygiene, 359 F. App'x 385, 389 (4th Cir. 2009) (unpublished).

Taking the facts in the light most favorable to the non-movant, a reasonable jury could conclude that the interview committee, which included Luton, was principally responsible for the hiring decision and, therefore, the actual decisionmaker—not just Delano. The written summary of the interviews frames the hiring decision as a group decision in which all three members met to discuss their impressions of each candidate and rank candidates collectively, noting that "[w]e were looking to find someone who (1) had the right skill set, (2) fit within the pay structure, and (3) had the right attitude." Candidate Recap Post-Interviews, ECF No. 32-14, at 1. Luton's alleged comment to Bandy—"we hired my wife's cousin; he's much younger and more energetic…"—tends to show that he felt like an actual decisionmaker in the process, not just Delano. See Bandy Dep., ECF No. 33-9, at 80. In a conversation recorded by Bandy, Delano explained that "we all" made the decision and "that's why there's three people on the panel." Recorded Conversation, ECF No. 32-18, at 13:41–48.

To be sure, there is ample testimony supporting Salem's contention that Delano was both the formal and the actual decisionmaker, and that the interview committee only plays a supporting role in her hiring decision. See, e.g., Bandy Dep. at 72 ("She discussed some reasons that she chose Jefferson Lee…."); Delano Dep., ECF No. 33-2, at 32 ("Q. Who made the ultimate decision concerning the hiring for the booking coordinator position? A. I did."); Recorded Conversation at 13:48–13:58 ("…Chris and Hank didn't outnumber me. If I didn't agree with that decision, I wouldn't have put him in there. Cause I have the authority to flip that switch."); Luton Dep., ECF No. 33-3, at 52 ("We did not reach that during that time. Chris had his list, he gave his to Wendy, and then Wendy, she made the decision from that."); Fischer Dep., ECF No. 33-4, at 18 ("Q. Who has the final say as to who got the booking

11

coordinator job? A. Wendy Delano."). But the persuasive value of this evidence is not the same as the absence of a factual dispute. Deciding which of these competing narratives is true requires assessing credibility and weighing evidence—a role best reserved for the jury. Given Luton's role on the interview committee, a reasonable juror could conclude that Bandy has proffered direct evidence of discrimination by an actual decisionmaker.

For example, in Schafer, 359 F. App'x at 389 (unpublished), the Fourth Circuit vacated the district court's grant of summary judgment because it found there was "a genuine factual dispute concerning whether [a person who made a discriminatory comment was] an actual decisionmaker" given some of the testimony in the record. Similarly, in Worldwide Network Services, LLC v. Dyncorp Intern., LLC, 365 Fed. Appx. 432, 441 (4th Cir. 2010) (unpublished), the Fourth Circuit found that the district court did not abuse its discretion in refusing to give jury instruction based on Hill because the parties "offered conflicting evidence regarding who had authority" to make the decision at issue, unlike in Hill where "this problem of identification was absent." By contrast, the Fourth Circuit has upheld grants of summary judgments in which the facts of the decision-making process are undisputed. See Ousley v. McDonald, 1:12CV31, 2015 WL 1475703, at *10 (M.D.N.C. Mar. 31, 2015) ("The parties do not dispute the process by which Plaintiff was removed as Police Chief."), aff'd, 648 F. App'x 346 (4th Cir. 2016) (unpublished); Scott v. Lumbee River Electric Membership Corp., 5:06-CV-92-F(2), 2007 WL 9718495, at *6 (E.D.N.C. Jan. 31, 2007) ("Plaintiff points to no evidence, nor does she argue, that Hunt blindly relied on the interview committee's recommendations."), aff'd, 286 F. App'x 27 (4th Cir. 2008) (unpublished). The record in this case, read in the light most favorable to Bandy, is more akin to Schafer and Worldwide

Network Services, LLC, than Ousley and Scott. The record gives mixed signals as to who was the actual decisionmaker. Accordingly, summary judgment is improper on these grounds.

### B. Bandy cannot prove that age was the but-for cause of Salem's decision to not promote her to the Booking Coordinator position.

Bandy proffers direct evidence of age discrimination by a member of the interview committee: Luton's alleged comment that Lee received the job over Bandy because he was younger and more energetic. "Direct evidence is 'evidence of conduct or statements that both reflect directly the allegedly discriminatory attitude and that bear directly on the contested employment decision." Cole, 811 F. App'x at 175 (citing Taylor v. Virginia Union Univ., 193 F.3d 219, 232 (4th Cir. 1999) (en banc)). "Derogatory comments about an employee's age may be direct evidence of age discrimination, provided they concern the employee's age and sufficiently demonstrate that the employer's age-related animus affected the employment decision at issue." Arthur, 593 F. App'x at 218.

In recent, unpublished cases involving derogatory comments about age, the Fourth Circuit has applied the Fifth Circuit's test from Jackson v. Cal-W. Packaging Corp., 602 F.3d 374 (5th Cir. 2010), to determine whether derogatory comments were direct evidence of age discrimination. See Cole, 811 F. App'x at 175; Arthur, 593 F. App'x at 218–19. This test dictates that "derogatory comments are direct evidence of discrimination if they are (1) 'related to the protected class of persons of which the plaintiff is a member'; (2) 'proximate in time to the complained-of adverse employment decision'; (3) 'made by an individual with authority over the employment decision at issue'; and (4) 'related to the employment decision at issue.'" Cole, 811 F. App'x at 175 (citing Jackson, 602 F.3d at 380). Here, there is no genuine dispute that Luton's comment was related to Bandy's age, proximate in time to Salem's decision to

hire Lee over Bandy, and related to the employment decision at issue. As discussed above, the parties dispute that Luton was an individual with authority over the employment decision at issue, but because the court finds that this issue is best resolved by the jury, the court will treat Luton's derogatory comment as direct evidence of age discrimination on summary judgment.

Bandy also proffers some circumstantial evidence of age discrimination, including (1) Delano's hiring and promotion of younger men, including Luton and Fischer; (2) Delano's allegedly intentional exclusion of an HR staff member from the Booking Coordinator interview committee; (3) Delano's surprise and alleged awkwardness upon hearing that Bandy was applying for the Booking Coordinator position; (4) Luton's familial relationship with Lee; and (5) the lack of age discrimination training prior to Bandy's lawsuit. See generally Mem. in Opp., ECF No. 33. "A plaintiff can prove an ADEA violation through circumstantial evidence using the burden-shifting framework of McDonnell Douglas Corp. v Green, 411 U.S. 792, 802[–04] (1973)." Cole, 811 F. App'x at 172.[4] In this framework: "(1) the plaintiff must establish a prima facie case of discrimination or retaliation; (2) if the plaintiff presents a prima face case, then the burden shifts to the defendant to show a legitimate non-discriminatory or non-retaliatory reason for the adverse employment action; and (3) if the defendant shows such a reason, then the burden shifts to the plaintiff to prove that the reason is pretextual." Sanders v. Tikras Tech. Sols. Corp., 725 F. App'x 228, 229 (4th Cir. 2018) (per curiam) (citing McDonnell Douglas, 411 U.S. at 802–04). To establish a prima facie case of discrimination

---

[4] Generally, the Fourth Circuit considers cases involving direct evidence of discrimination to be a poor fit for the McDonnell Douglas framework. See, e.g., Wilhelm v. Blue Bell, Inc., 773 F.2d 1429, 1432 (4th Cir. 1985) (direct evidence of discrimination obviated need for independent showing that employer's articulated reasons for discharges were pretextual); Spagnuolo v. Whirlpool Corp., 641 F.2d 1109, 1113 n. 2 (4th Cir. 1981) (case involving direct evidence of discrimination "simply does not fit the mold of the McDonnell Douglas formula"). The court details both approaches because it finds that Bandy fails to meet the causation standard under either.

14

under the ADEA in a failure-to-promote case, a plaintiff must establish: (1) she was a member of the protected class; (2) she applied for an open position; (3) she was qualified for the position; and (4) she was denied the promotion under circumstances that created an inference of unlawful discrimination. Gurganus v. Beneficial, N.C., Inc., 25 F. App'x 110, 111 (4th Cir. 2001).

"Regardless of the method of proof, a plaintiff retains the ultimate burden to prove by a preponderance of the evidence that age…was 'the but-for' cause of the challenged employer decision." Cole, 811 F. App'x at 172 (citing Gross, 557 U.S. at 177–78; Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 252 (4th Cir. 2015)).[5] "In other words, if there existed other legitimate motivations for the decision, the employee must offer sufficient evidence to show that these factors were not 'the reason' for the employer's decision." Arthur, 593 F. App'x at 220 (quoting Gross, 557 U.S. at 176). "It follows that 'direct evidence of age discrimination may not always be sufficient to create a question of fact for trial in the ADEA context.'" Cole, 811 F. App'x at 175 (citing Scheick v. Tecumseh Pub. Schs., 766 F.3d 523, 532 (6th Cir. 2014).[6] "When evaluating cases like this on summary judgment, our focus is on whether the plaintiff has provided sufficient evidence to cast doubt upon the employer's stated reasons for the employment action, such that a reasonable juror may find age was the

---

[5] Bandy argues that "but for" cause does not mean "sole cause," citing Taylor v. Rite Aid Corp., 993 F. Supp. 2d 551, 567 (D. Md. 2014), and Bostock v. Clayton Cty., 108 S. Ct. 1731, 1739, 1748 (2020). The court agrees events may have multiple but-for causes, but Bandy's citations demonstrate that the causal chain must still hold. The fact that an event may have multiple but-for causes does not make the ADEA's but-for causation standard indistinguishable from the "motivating factor" standard in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).
[6] Bandy argues that summary judgment is precluded in the Fourth Circuit where direct evidence of discriminatory animus exists, citing Wilhelm, 773 F.3d 1429, and Spagnuolo, 641 F.2d 1109. Bandy's cited case law supports the idea that the McDonnell Douglas framework is a poor fit for cases involving direct evidence of discrimination, but it does not dictate that summary judgement is always improper if the plaintiff offers direct evidence of discrimination. See supra note 4.

15

determinative factor in that decision." <u>Arthur</u>, 593 F. App'x at 220–21. Salem argues it cannot be held liable under the ADEA because, even if there is direct evidence of age discrimination and Bandy can establish a <u>prima facie</u> case, Salem would have hired Lee regardless. Mem. in Supp. of Mot. for Summ. J. ("Mem."), ECF No. 32.[7] Bandy argues that her past experience in the position 30 years ago, her familiarity with the facility, and her initially-positive interview feedback show that she was more qualified for the position over Lee and, had her age not played a factor, she may have received the job.

The court finds that Bandy has not offered sufficient evidence for a reasonable juror to find that the Civic Center would have hired Bandy over Lee had age not factored into the decision. Salem has presented evidence showing that it hired Lee because of his past job experience, sales background, enthusiasm, preparation, and "laid-back, yet outgoing demeanor," which made the interview committee feel like he would work well with a variety of clients and with the Civic Center's staff members. Candidate Recap Post-Interviews, ECF No. 32-14. Bandy has largely avoided comparing her qualifications to Lee's, pointing instead to the Civic Center's prior decisions not to hire Lee because he was unqualified. Mem. in Opp., ECF No. 33, at 18. She argues that a question of fact exists as to superiority of Lee's qualifications without explaining how Bandy might have been the superior candidate, other than her prior booking duties for the Civic Center over 30 years ago, which she did not include

---

[7] Salem also argues it should receive a strong presumption in its favor on this regard because Luton and Delano both served on Bandy's interview panel a year earlier and Sowder ultimately hired Bandy for the Box Officer Cashier position. Mem. at 23 (citing <u>Proud v. Stone</u>, 945 F. 2d 796, 797 (4th Cir. 1991) (where the person who hired the plaintiff is the same individual who decided the adverse employment action, which occured within a relatively short time following the hiring, there is a "strong inference" that discrimination was not a determining factor for the adverse action); <u>Rosenow v. CareCore Nat'l, LLC</u>, No. 9:10-cv-1592-RMG, 2012 WL 1802456, at *8 (D.S.C. May 17, 2012) (finding 17 months was a sufficiently short time span to create a strong inference that discrimination was not a determining factor in the adverse employment action)).

in her application for the position. Id.; see also Bandy Application, ECF No. 32-3.[8] She does otherwise not attempt to bolster her sales background, her enthusiasm for the position, her preparation, nor how her demeanor would support her ability to connect with clients and fellow staff members. Bandy argues that Delano conceded that her criteria for evaluating Booking Coordinator candidates were "completely subjective," but she does not argue that Bandy was objectively more qualified than or as qualified as Lee in any of these areas. Mem. in Opp., ECF No. 33, at 17.

Bandy essentially alleges that the hiring process was stacked entirely in Lee's favor, but the court finds this argument "'so tenuous as to amount to speculation or conjunction,' and thus not useful in opposing a motion for summary judgment." Billingslea v. Astrue, 502 F. App'x 300, 303 (4th Cir. 2012) (affirming summary judgment in favor of defendant in failure-to-promote claim under ADEA).

Most importantly, Salem offered uncontradicted evidence showing Bandy was not among any interview committee member's top three candidates. Even if Lee was not offered the job, the job would have gone to one of two other candidates that the interview committee members believed were more qualified, including a candidate older than Bandy. In sum, Bandy has not put forward "sufficient evidence to cast doubt upon [Salem's] stated reasons," for hiring Lee over her. Arthur, 593 F. App'x at 220–21.

---

[8] Bandy also argues that Delano's concerns over her varied work history, including the years she stayed home to take care of her daughter, may constitute motherhood discrimination and "[w]ithout question, a jury may well find that a 54 year-old woman who has raised children and grandchildren and formed a lifetime of relationships living and working in the City of Salem is at least as qualified [as] a 23 year-old straight out of college to book banquet rooms at the Salem civic center." Mem. in Opp., ECF No. 33, at 18–19. This argument misconstrues Delano's testimony, which was concerned with Delano's frequent moves from one job to another and not with her years as a full-time mother, and oversimplifies the Booking Coordinator job description. Delano Dep., ECF No. 33-2, at 84–85. As such, the court disregards it.

Bandy's causation burden is undoubtedly high, but the Fourth Circuit has upheld grants of summary judgment against plaintiffs who alleged substantially more evidence—direct and circumstantial—of age discrimination because they failed to cast doubt on the employer's legitimate motivations for firing them. See generally Arthur, 593 F. App'x 211; Cole, 811 F. App'x 168. Causation is somewhat murkier in failure-to-promote claims than termination claims, but a close review of parallel cases convinces this court that summary judgment is proper. In Shelley v. Geren, 666 F.3d 599, 609–12 (9th Cir. 2012), the Ninth Circuit reversed and remanded the district court's grant of summary judgment for the defendant because there was a genuine dispute as to whether the plaintiff's experience, education, and recognition in the field was superior to the younger candidate who was chosen. The plaintiff has proffered direct and indirect evidence of age discrimination, three of the five panelists on the plaintiff's interview committee had given him a top score on his application, and it was only the alteration of one unidentified panelist's application score that cost the plaintiff an interview and disqualified him for the position. Id.  Similarly, in Hilde v. City of Eveleth, 777 F.3d 998, 1007–08 (8th Cir. 2015), the Eighth Circuit reversed and remanded a grant of summary judgment for the defendant because the evidence showed that the hiring commission improperly considered a police lieutenant's retirement eligibility, did not follow its own hiring protocol, lowered the lieutenant's application score—the only finalist to have his scores changed—without any explanation, and asked the outgoing police chief, who preferred the lieutenant as his replacement, to leave the room as they deliberated. Id. at 1002, 1007–08.

These sorts of thin margins do not exist in this case. There's no evidence that the interview committee discounted Bandy's equivalent or superior experience. And there's no

evidence that Lee's qualifications at the time he applied for the Booking Coordinator position were manipulated or otherwise given improper weight because of his age. Bandy alleges that the interview committee was "stacked" by Delano, who allegedly preferred hiring younger men and sought to exclude HR representatives from the interview committee, so that she could hire Lee without their interference. See generally Mem. in Opp., ECF No. 33. But she offers no evidence HR still screened applicants to ensure that candidates who received interviews met the minimum qualifications. Jordan Dep., ECF No. 33-12, at 13–17. Lee's qualifications and experience had evolved during his time as an Assistant Athletic Director and the Booking Coordinator position was a better fit for him. Delano, Luton, and Fischer certainly may have liked Lee's youthful enthusiasm and wanted to hire him, but they denied him other opportunities when they thought him unqualified. Bandy herself testified that she thought age played no role in Delano's deliberations. Bandy Dep., ECF No. 33-9, at 106; see also Recorded Conversation, ECF No. 32-18, at 24:00–14. At best, "age was a motivating factor" for hiring Lee over Bandy, not the "but-for cause." Gross, 557 U.S. at 174, 177–78. The court finds that no reasonable jury could find in Bandy's favor on her ADEA failure-to-promote claim.

## IV.   BANDY'S CONSTRUCTIVE DISCHARGE CLAIM

Bandy also alleges that she was constructively discharged by the failure to promote her combined with Luton's behavior towards her after she resigned. "[A]n employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes." Penn. State Police v. Suders, 542 U.S. 129, 141 (2004). "To establish a constructive discharge claim, a plaintiff must show that she was discriminated

against by her employer to the point where a reasonable person in her position would have 'felt compelled to resign' and that she actually resigned." Jones v. UnitedHealth Group, Inc., 802 F. App'x 780, 783 (4th Cir. 2020) (unpublished) (citing Green v. Brennan, --- U.S. ---, 136 S. Ct. 1769, 1776–77 (2016)). "Unless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress." Evans v. Int'l Paper Co., 936 F.3d 183, 193 (4th Cir. 2019).

Salem argues that Bandy cannot succeed on a constructive discharge claim because she cannot prove that the City, through deliberate actions motivated by age bias, made her working conditions intolerable "in an effort to induce [her] to quit." Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 186 (4th Cir. 2004). It contends that no reasonable juror could find that Bandy was constructively discharged because the two instances of improper conduct by Luton are far from intolerable, both occurred after she had already resigned, and she told Delano that she resigned because she needed more hours and money—not because of any comments made to her by Luton or anyone else. Mem., ECF No. 32, at 24–25. Bandy argues that (1) Salem's standard overstates her burden under Green and (2) whether Bandy's working conditions were intolerable is a question of fact that must be resolved by the jury. Mem. in Opp., ECF No. 33, at 22. Bandy also alleges that the failure to promote her showed her that she had no future at the Salem Civic Center and whether someone in her position would have felt compelled to resign is essentially a question of fact for the jury. Mem. in Opp. at 21–23.

The court finds that no reasonable juror could find that Bandy was constructively discharged. The failure to promote her by itself is insufficient to constitute a constructive discharge. Vaughn v. CMH Homes, Inc., 77 F. App'x 660, 661 (4th Cir. 2003) (unpublished)

("a failure to promote is insufficient in itself to result in a constructive discharge"). And "a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." Honor, 383 F.3d at 187. Luton's two "harassing" comments, seemingly giddy about Bandy's departure, were both made after she resigned. No reasonable juror could conclude that Salem's failure to promote her, combined with Luton's one comment about Lee being hired because he was "much younger" and "more energetic," would have made working at the Civic Center intolerable. See, e.g., Williams v. Giant Food Inc., 370 F.3d 423, 434 (4th Cir. 2004) (grant of summary judgment to employer on constructive discharge claim was proper where "supervisors yelled at employee, told her she was a poor manager, gave her poor performance evaluations, chastised her in front of customers, and once required her to work with an injured back"); Munday v. Waste Management of North America, 126 F.3d 239, 244 (4th Cir. 1997) (evidence that employee was ignored by coworkers and management was insufficient to show constructive discharge).

## V.   CONCLUSION

Because no reasonable juror could find that Bandy would have been hired for the Booking Coordinator position but for her age and because no reasonable juror could find that Bandy was constructively discharged based on interactions that took place after she resigned, the court will **GRANT** Salem's motion for summary judgment, ECF No. 31. An appropriate order will be entered.

It is so **ORDERED**.

Entered:   March 19, 2021

Michael F. Urbanski
Chief U.S. District Judge
2021.03.19 16:45:28
-04'00'

Michael F. Urbanski
Chief United States District Judge